## William Graham v. Robert H. Bleakie.

Where the title to land sold under a judgment of foreclosure is good, and the purchaser refuses to complete the purchase, a resale may be ordered, in which case the purchaser will be answerable for the deficiency; or the court may, if the purchaser is a responsible person, absolutely order him to complete the purchase, and, on his default, issue an attachment against him. The latter is the proper course where there is reason to believe that the purchaser is acting in collusion with the mortgagor to frustrate the sale.

Upon an order requiring a purchaser at a judicial sale to show cause why he should not complete the purchase, he may apply to the court for an order of reference to ascertain if a title can be made, and if it appears from the referee's report that the title is irremediably bad or of doubtful validity, the court will not compel him to complete the purchase.

The only estate of the mortgagor in the mortgaged premises was a leasehold interest, but the mortgage purported to convey the fee; and on a foreclosure of the mortgage, the judgment, following the terms of the mortgage, erroneously directed a sale of the premises as in fee. *Held,* that a purchaser at the sale under such decree, having full notice of the facts and of the leasehold title of the mortgagor, could not take advantage of the irregularity of the decree. Where the court has jurisdiction of the subject matter, and of the parties, a sale under its judgment will transfer to the purchaser whatever title the mortgagor has in the premises, even though the judgment should afterward be reversed or set aside for error or irregularity.

Where a defect in the title of a mortgagor which is objected to by a purchaser on a foreclosure sale of the mortgaged premises, is offered, by the referee, to be effectually cured, by tendering to the purchaser a confirmatory deed by the mortgagor's grantor, such defect of title, if cured, cannot be urged by the purchaser as a reason for not completing the purchase.

Where a person who is ordered to show cause why he should not be punished for a contempt in not obeying an order theretofore served on him, insultingly refuses to receive the order to show cause, or a copy of the order disobeyed, and directs the person presenting the papers, to serve them upon his attorney, *Held*, sufficient proof of a demand and refusal, to authorize the issuing of an attachment.

APPEAL from an order directing a purchaser at a fore-closure sale to complete the purchase, and from an order directing that an attachment for contempt issue against him for refusal to obey, bailable in the sum of ten thousand dollars.

This action was brought for the foreclosure of a mortgage in which a judgment of sale was rendered for the plaintiff, from which the defendant Bleakie appealed, without, however, giving the undertaking, required by law, to stay proceedings. The mortgaged premises were sold at auction to George J. Carey, as the highest bidder, who thereupon signed the terms of sale, and paid ten per cent. of the purchase money, &c. Instead of completing the purchase by paying the balance of the purchase money to the referee when due, an extension of time was obtained from the referee, for that purpose, and on the 22d of September, 1865, the purchaser, by his attorney, filed with the referee, objections to the completion of the purchase, and demanded the return of the ten per cent. paid by him on account of the purchase price. These objections were substantially as follows:

1. There was no proper stamp affixed to the summons, as required by the Internal Revenue laws.

2. The alleged judgment entered in this action directs a sale of the premises in fee, and the said judgment has not been modified or vacated, but the referee has sold without reference to the authority given him by said judgment, an entirely different estate in the premises. The referee had no such power, and cannot convey any such estate.

3. The said premises are, as matter of fact, incumbered with the right to the owners of the adjacent premises respectively, to use the side walls thereof as party walls; and the referee gave no notice to the purchaser of said lien.

4. The leases which form the foundation of the title of the mortgagor, appear to be, and were, executed by Valentine G. Hall, one of the executors of John Pounele, whereas to confer any title, the same should have been executed by all the qualified trustees under the will of said John Pounele, to whom the estate in fee of said premises belonged.

5. Under the foreclosure in this action none of the covenants of renewal for the payment of buildings, for the appointment of arbitration and otherwise, contained in said leases, are in any wise affected, but remain still outstanding and vested in the defendant, Jane Bleakie, and no title thereto can be acquired under the referee's deed herein.

6. The premises are subject to the payment, as between the purchaser at said referee's sale and the said Valentine G. Hall, of a ground rent of $1,500 per annum, and to certain restrictions as to nuisances, the nonobservance of which by the owners of the adjacent premises would subject said purchaser to the risk of forfeiture and loss, and of which no notice was at the time of said sale given to the purchaser thereat.

7. The mortgage sought to be foreclosed in this action is a mortgage of the fee of the lots therein described, and not of the leasehold estate which was the sole estate of the mortgagor therein, and said mortgage does not authorize any foreclosure of said leasehold estate, nor the right of renewal or payment of the buildings thereon; nor can the purchaser be vested under said referee's deed with any estate or rights under said covenants.

To these objections the plaintiff's attorney served answers denying the allegations, or stating that the purchaser bought with notice of them, and that a deed of confirmation of said leases was in the hands of the referee for the benefit of the purchaser. The purchaser still refusing to complete the purchase, an order to show cause why he should not be required to do so, and in default thereof, why an attachment should not issue

against him was obtained. On the hearing of the order to show cause, an order was made requiring Carey to complete its purchase within five days, and on his failure to comply therewith, it was ordered that an attachment issue against him.

It was alleged in the moving papers, and denied, that Carey was acting in collusion with the defendants to prevent the plaintiff from obtaining any benefit from the judgment herein.

From the above orders, the purchaser, Carey, appealed to the general term.

*William R. Stafford*, for appellant, on the point that the purchaser was not bound to take the title, cited *Heyer* v. *Deaves*, 2 Johns. Ch. 154; *Laight* v. *Pell*, 1 Edward's Ch. 577; *Yates* v. *Woodruff*, 4 Id. 700; *Fuller* v. *Van Giesen*, 4 Hill, 171; *Ryan* v. *Dox*, 25 Barb. 440, 7; *Darvin* v. *Hatfield*, 4 Sandf. 471. On the question of contempt, he cited *Pitt* v. *Davidson*, 37 Barb. 97; *Fassett* v. *Talmage*, 14 Abbott Pr. 188; *Gray* v. *Cook*, 24 How. Pr. 432; *Panton* v. *Zebley*, 19 Id. 394; 2 *Rev. Stat.* 769, § 4; Code, § 285.

*Albert Mathews*, and *Lewis Johnson*, for the respondent, on the question of title, cited *Lawrence* v. *Delano*, 3 Sandf. 333, 2 *Rev. Stat.* 172, § 158; and on the question on practice, *Requa* v. *Rea*, 2 Paige, 239; *Crary* v. *Smith*, 2 N. Y. 60; *People* v. *Brower*, 4 Paige, 405; *Landsdown* v. *Elderton*, 14 Vesey, 512; *Livingston* v. *Fitzgerald*, 2 Barb. 396.

By the Court.—Daly, F. J.—If the refusal of Carey to complete the purchase was upon the ground that the title was doubtful, he could, according to the established practice of courts of equity, have applied to the court for an order of reference to ascertain if a title could be made; and if, upon the coming in of the referee's report, it appears that there is a defect in the title which cannot be remedied, or that there is a well founded doubt as to its validity, the court will not compel him to complete the purchase (1 Sugden on Vendors and Purchasers, 60, *n.* 1; *Bannister* v. *Way*, Dick, 686; *Saunders* v. *Grey*, 4 Myl. & C., 515; *Tanner* v. *Radford*, Id. 518; *Harding* v. *Harding*, Id. 514; *Johnson* v. *Reardon*, 3 Ir. Eq. R. 200; *Hodder* v. *Ruffin*, 1 Ves. & B. 544; 2 Dan. Ch. P. 919).

Upon the order requiring him to show cause why he should not complete the purchase, he made no such application, but relied upon certain written objections to the title which his attorney had served upon the referee, by whom the sale was made. There was but one of these objections that could create any doubt as to the validity of the title, and that was removed by the plaintiff's obtaining a deed of confirmation from the executrix, which was left with the referee, and of which Carey had notice.

The other objections were passed upon by Judge Cardozo upon the motion to show cause, and were properly adjudged by him to be without foundation. The third, fifth, sixth, and seventh objections relate to covenants or conditions arising upon the lease, of which Carey had full notice before the sale. By the terms of sale the estate was declared to be a leasehold interest in the premises, created by an instrument in writing, a certified copy of which was annexed, and which estate was to be sold subject to all the conditions, terms, and provisions in the instrument and in the lease, certified copies of which were also annexed. The terms of sale and the certified copies of the lease and the mortgage, were publicly read at the time of the sale, within Carey's hearing, and after the mortgaged premises were struck off to him, he signed a memorandum at the end of the written terms of sale, declaring that he had become the purchaser, and promising to comply with the terms and conditions of the sale. He had, therefore, ample notice of the matters which he afterward made a ground of objection, and subject to which he agreed to become the purchaser.

The first objection, that the summons in the foreclosure writ was without a Government stamp, was shown upon the motion to be unfounded in fact. As respects the second objection, it is sufficient to say that if the mortgage purported to convey a greater estate than Bleakie had in the premises, Carey was not misled by it, as he was advised by the terms of sale of the exact nature of the interest which the referee undertook to, and did, sell. If there was an irregularity in not entering up the decree for the sale of a leasehold interest, which was all that Bleakie could mortgage, that is not a matter of which a purchaser can

take advantage (*Baker* v. *Sawter*, 10 Beav. 343; *Bennett* v. *Hamil*, 3 Sch. & Lef. 566; *Conyers* v. *Crosbie*, 7 Ir. Eq. R. 401). The court had jurisdiction of the subject matter and of the parties, and a sale under the judgment would transfer to the purchaser whatever title the mortgagor had in the premises, even though the judgment should be afterward reversed or set aside for error or irregularity upon appeal (*Breese* v. *Bange*, 2 E. D. Smith, 474; *Blakely* v. *Calder*, 15 N. Y. 617; *Packer* v. *The Rochester & Syracuse R. R. Co.*, 17 Id. 288; *Holden* v. *Sackett*, 12 Abb. 475; *Wood* v. *Jackson*, 8 Wend. 9; *Brainard* v. *Cooper*, 10 N. Y. 359; *Buckmaster* v. *Jackson*, 3 Scam. 104; *Bank of the U. S.* v. *Voorhes*, 1 McLean, U. S. 24). The decree followed the terms of the mortgage in the direction for the sale, and if the referee sold a lesser estate than was expressed in the mortgage it does not lie with the mortgagor to object, nor with the purchaser, when his title to the leasehold interest is confirmed by a deed from the executors.

Where the purchaser refuses to complete the purchase, a resale may be ordered, in which case he would be answerable for the deficiency; or the court, if the purchaser is a responsible person, may make an absolute order that he complete the purchase, or that an attachment issue against him (*Saunders* v. *Grey*, 4 Myl. & C. 515; *Landsdown* v. *Elderton*, 14 Ves. 512; 2 Rev. Stat. 278, 534; *Miller* v. *Colyer*, 36 Barb. 250; 1 Barbour's Chancery Practice, 536). The latter is the proper course where there is some reason to suppose, as I think there is in this case, that the purchaser is acting in collusion with the mortgagor, and that his object in refusing to complete the purchase is to frustrate the sale. This Carey denies; but his refusing, after a deed of confirmation was obtained, with the nature of the objections he has raised, indicate very plainly to my mind, that his real reason is not founded upon any apprehension respecting the title.

A certified copy of the order directing Carey to complete the purchase within five days was personally served upon him, and a copy of it was annexed to the order to show cause why he should not be attached as for a contempt. When the order to show cause, with the accompanying papers, was presented to

him, he, as appears by the affidavit of service, insultingly re-fused to receive them, and told the person presenting them to serve them upon his attorney. This was sufficient proof, under the statute, of a personal demand and refusal, to authorize the issuing of an attachment (2 Rev. Stat. 535, § 4; *Lorton* v. *Seaman*, 9 Paige, 609; *Gray* v. *Cook*, 24 How. 432). Both orders should therefore be affirmed, but as the appeal from the judg-ment has been argued at the present term, and as the grounds relied upon for a new trial were deemed sufficiently grave to require a careful consideration on the part of the court, a stay of proceedings will be allowed upon application to any one of the judges, until the court shall decide whether it is necessary to grant a new trial or not.